1  TREVOR Q. CODDINGTON, PH.D. (CSB NO. 243042)
2  trevorcoddington@sandiegoiplaw.com
   CODY R. LEJEUNE (CSB NO. 249242)
3  codylejeune@sandiegoiplaw.com
4  CHARLES A. BLAZER (CSB NO. 282495)
   charlesblazer@sandiegoiplaw.com
5  SAN DIEGO IP LAW GROUP LLP
6  703 Palomar Airport Rd, Suite 210
   Carlsbad, CA 92011
7  Telephone: (442) 325-1024
   Facsimile: (858) 408-4422
8
9  Attorneys for Plaintiff,
   P.I.C. International, Inc., d.b.a. H2Odyssey
10
                    UNITED STATES DISTRICT COURT
11
                   SOUTHERN DISTRICT OF CALIFORNIA
12

13

14  P.I.C. INTERNATIONAL, INC., d.b.a.     CASE NO.  **'19CV0734 GPC LL**
    H2Odyssey, a California corporation,
15                                         **COMPLAINT FOR:**
16                Plaintiff,
17       vs.                               **1) DECLARATORY JUDGMENT
                                           OF NON-INFRINGEMENT;**
18  GOOPER HERMETIC, LTD., an              **2) FALSE PATENT MARKING;**
    Israeli limited company; and Steve     **3) LANHAM ACT - FALSE
19  Charles Goldstein, an individual       ADVERTISING;**
    residing in California; and DOES 1-10,
20  inclusive,
21                                         **DEMAND FOR JURY TRIAL**
                  Defendants.
22

23

24

25

26

27

28

COMPLAINT

Plaintiff P.I.C. International., d.b.a., H2Odyssey ("H2Odyssey" or "Plaintiff") hereby complains of Defendants Gooper Hermetic, Ltd. ("Gooper") and Steve Charles Goldstein ("Goldstein") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.     This is a declaratory judgment action seeking a determination that H2Odyssey does not infringe any valid or enforceable claims of U.S. Patent No. 9,966,174 (the "Patent-in-Suit"), attached hereto as Exhibit 1, under 35 U.S.C. § 271 *et seq.*

2.     Further, H2Odyssey seeks a determination that Defendants have committed: (a) false patent marking under 35 U.S.C. § 292 *et seq.*; and (b) false advertising under 15 U.S.C. §1125 *et seq.*

## THE PARTIES

3.     Plaintiff H2Odyssey is a California corporation with its principal place of business located at 975 Park Center Drive, Vista, California 92081.

4.     Gooper purports to be an Israeli limited company with its headquarters in Israel.

5.     Goldstein is an individual that resides in Escondido, California and represents to the public that he is the "President of Sales & Marketing at Gator Dry Bags (a Gooper Hermetic Brand)." On information and belief, Gator Dry Bags, or any permutation thereof, is not registered as a business with the California Secretary of State, nor as a fictitious business name with San Diego County.

6.     On information and belief, Goldstein is doing business with Gooper as its sales representative, among other tasks.  Goldstein solicits business in this District on behalf of Gooper, including the distribution and sales of Gooper and Gator magnetic dry bags.  Goldstein has been charged by Gooper with finding a North American distributor for Gooper's magnetic dry bags.  Goldstein and Gooper began conducting business together while Goldstein was working for

H2Odyssey.

7.     H2Odyssey is ignorant of the true names and capacities of the parties sued herein as DOES 1 through 10, inclusive, whether individual, corporate or otherwise, and therefore sues these defendants by such fictitious names. H2Odyssey will seek leave to amend the complaint to assert their true names and capacities when they have been ascertained. H2Odyssey is informed and believes and based thereon alleges that all defendants sued herein as DOES 1 through 10 are in some manner responsible for the acts and omissions alleged herein.

## **JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction over H2Odyssey's request for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.  This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., 15 U.S.C. § 1125(a), and 35 U.S.C. § 292, which are within the subject matter jurisdiction of this Court under 28 U.S.C. §§ 1331 and 1338(a).

9.     Defendants' threatening communications allege infringement of the Patent-in-Suit by, among others, the purchasers of H2Odyssey's products.  In turn, H2Odyssey's customers ceased purchase of H2Odyssey's products.  Thus, the allegations made by Defendants in their threatening communications give rise to an actual and justiciable controversy between Defendants and H2Odyssey as to the non-infringement of the Patent-in-Suit.

10.     Defendants' infringement allegations threaten actual and imminent injury to H2Odyssey that can be redressed by judicial relief and that injury is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Absent a declaration of non-infringement, Defendants' continued wrongful assertions of infringement related to the use of H2Odyssey's products will continue to cause harm to H2Odyssey.

11.     This Court has original and exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

-2-

12. This Court has personal jurisdiction over Defendants because Defendants have directed patent infringement threats against H2Odyssey customers located in San Diego, including doing such in person.

13. Further, this Court has personal jurisdiction over Defendants because Goldstein resides in this District, and Gooper has a continuous, systematic and substantial presence in this District, because it regularly conducts business and/or solicits business within this District, because it has committed and continues to commit violations in this District, including, without limitation, misrepresenting to customers in this District that H2Odyssey is infringing the Patent-in-Suit and misrepresenting that Defendants' products are protected by the Patent-in-Suit, and by purposefully directing activities at residents of this District, which acts form a substantial part of the events giving rise to H2Odyssey's claims.

14. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Goldstein resides in this District, and all Defendants have committed violations, have a regular and established place of business in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

### H2Odyssey Background

15. In 1986, Don Western founded H2Oddsey to develop diving, surfing, and various aquatic products, such as air systems, hoses, tanks, accessories, wetsuits, fins, boots, masks, snorkels, dry bags, etc.

16. Currently, H2Odyssey is a preeminent manufacturer of such aquatic products and touts itself as "Your Aquatic Adventure Outfitter." H2Odyssey supplies aquatic enthusiasts across the globe with its cutting-edge products that allow consumers to fully enjoy every activity that the water has to offer.

17. In 2014, H2Odyssey began distribution of GoBag™, which keeps phones dry in up to 100' of water. Not only does the GoBag keep phones from getting wet, but the GoBag also provides full functionality, allowing consumers to

-3-

manipulate touch screens, buttons and switches directly and easily through the bag.

18.     H2Odyssey developed and manufactured several different GoBag sizes to fit different phone and tablet sizes, naming them the Minnow, Dolphin™, Mako™, and Orca.

### H2Odyssey's Relationship with Defendants

19.     On February 16, 2017, H2Odyssey and Goldstein entered into a Non-Compete Agreement (the "Non-Compete Agreement") that precluded Goldstein from "serving as an officer, owner, partner, director, agent, employee or consultant to any firm or entity substantially engaged in a business similar or competitive to the 'GoBag' business."

20.     On March 23, 2018, H2Odyssey and Goldstein entered into a Sales Representative Agreement (the "Sales Rep Agreement") obligating Goldstein to assist H2Odyssey in selling H2Odyssey products throughout the world.

21.     As part of the Non-Compete Agreement, Goldstein worked exclusively for H2Odyssey and agreed not to disclose H2Odyssey's trade secrets or confidential information that he received or obtained as a result of his obligations pursuant to the Non-Compete Agreement.

22.     Around September of 2018, however, H2Odyssey discovered that Goldstein was misappropriating its trade secrets and confidential information by disclosing sensitive business and product financial information to Gooper's CEO Philip Naftali and Block Enterprises/Blue Wave Distribution.  In October of 2018, Goldstein was terminated by H2Odyssey.

23.     Around that time, Goldstein began holding himself out as "President of Sales & Marketing for the world's original manufacturer of patented magnetic dry bags, Gator Dry Bags (a Gooper Hermetic Brand)."

24.     Goldstein and Gator's website and LinkedIn page falsely claim that Gator Dry Bags are "patented" and protected by the Patent-in-Suit.

25.     Further, Goldstein and Gator Dry Bags have misappropriated

-4-

H2Odyssey's copyrighted images and product names for their commercial benefit at the detriment of H2Odyssey.  Indeed, both Gator's website and its LinkedIn page show that Gator's dry bags are named the Orca, Mako, Dolphin, and Minnow (the "Gator Bags").  In addition, several of the photos on Gator's website, www.gatordrybags.com, are taken directly from H2Odyssey's website.

### Defendants' Infringement Accusations and Threats of Legal Action

26.     Defendants have threatened numerous H2Odyssey customers, claiming that H2Odyssey's GoBags infringe the Patent-in-Suit.  As a result, customers have discontinued the purchase of H2Odyssey's GoBags, citing communications from Goldstein that threaten litigation as the sole reason.

27.     In addition, Philip Naftali, CEO of Gooper, has emailed H2Odyssey customers directly and requested that H2Odyssey's customers remove the GoBag from the list of items that the customer sells.

28.     These instances are just two examples of Defendants' intentional interference into H2Odyssey's business endeavors.

29.     Certain H2Odyssey customers have stopped purchasing the accused GoBags in view of Defendants' accusations and threats – two (2) of which are H2Odyssey's biggest customers.

30.     H2Odyssey has lost approximately $200,000 in sales due to Defendants' action.

### H2Odyssey Does Not Infringe the Patent-in-Suit

31.     Defendants have accused H2Odyssey's GoBags of infringing the Patent-in-Suit. In response, H2Odyssey sent a letter to Gooper on June 4, 2018 that detailed H2Odyssey's non-infringement position, including the baseless nature of Gooper's infringement allegations.[1]

32.     Claim 1 of the Patent-in-Suit, the only independent claim is repeated as follows:

---

[1] H2Odyssey also has a patent pending on its GoBag and has informed Gooper of this fact.

**COMPLAINT**

The invention claimed is:

1. A magnetic sealing closure, comprising:

a. a first flexible strip, having a main axis, a first side and a second side, with a plurality of cavities having a plurality of magnetic elements therein, said first strip having a uniform predetermined thickness defined by said first side and said second side;

b. a second flexible strip, having a main axis, a first side and a second side, with a plurality of cavities having a plurality of magnetic elements therein, said second strip having a uniform predetermined thickness defined by said first side and said second side;

c. a third flexible strip, having a main axis, a first side and a second side, with a plurality of cavities having a plurality of magnetic elements therein, said third strip having a uniform predetermined thickness defined by said first side and said second side;

wherein said sealing closure further comprises a first membrane coupled to said first side of said first strip, such that said plurality of magnetic elements of said first strip are flush mounted and embedded within said plurality of cavities between said first strip and said first membrane, said first membrane further coupled to said first side of said third strip, such that said plurality of magnetic elements of said third strip are flush mounted and embedded within said plurality of cavities between said third strip and said first membrane; and, said sealing closure further comprises a second membrane coupled to said first side of said second strip, such that said plurality of magnetic elements of said second strip are flush mounted and embedded within said plurality of cavities between said second strip and said second

membrane; wherein said first and said second strips provide a first seal when said first and said second strips are brought together from said first sides of said first and said second strips and magnetic elements of said first and said second strips magnetically attract each other, wherein said first and said third strips provide a second seal when said first, said second, and said third strips are subsequently brought together from said second sides of said first and said third strips and magnetic elements of said first and said third strips magnetically attract each other.

33.    In allowing claim 1 of the Patent-in-Suit by the United States Patent and Trademark Office ("PTO"), the PTO remarked that the "prior art references do not disclose the specific relationship between the first strip, second strip, and third strip of uniform thickness, magnetic elements embedded and flush mounted in

-6-

cavities, a first membrane, a second membrane, a first seal, and a second seal as claimed; it would not be obvious to one in the art to have this assembly of structure."

34.     The PTO continued that "[e]ven though the components of strips, magnetic elements, cavities, flush-mounted components, membranes, coating layers, and creating seals are known to be used in the magnetic fasteners art, a mass alteration of the structure of the prior art would be required to achieve the same connection and performance."

35.     In view of the actual, issued claim language and the Examiner's remarks, the structure recited in all claims of the Patent-in-Suit is to be interpreted narrowly. By their plain language, all claims require the first, second and third flexible strips to have a "uniform predetermined thickness." As shown below in a side view, *the structure of H2Odyssey's GoBag does not have flexible strips with uniform thicknesses as required by the Patent-in-Suit.*

36.     Instead, H2Odyssey's GoBag features a first flexible strip with a raised center with recessed edges, and the third flexible strip features a recessed channel with raised edges. When the first and third strips are brought together, the recessed channel with raised edges of the third flexible strips mates with the raised center with recessed edges of the first strip. The second flexible strip features a non-uniform thickness as well.

37.     This cross-section view of H2Odyssey GoBag's flexible magnetic strip clearly shows that it does not contain the required "uniform predetermined thickness":

COMPLAINT



38.     Moreover, the second (blue) strip includes recessed areas where artistic designs and the GoBag product names are displayed. All GoBags have historically included such markings/indentations, which are readily visible upon cursory inspection of the GoBag.

39.     Accordingly, H2Odyssey's GoBag does not fall within the scope of any claim of the Patent-in-Suit because it does not include "a first flexible strip, having…a uniform predetermined thickness…;" "a second flexible strip, having…a uniform predetermined thickness…;" nor "a third flexible strip, having…a uniform predetermined thickness" as claimed.

40.     In other words, the thickness of the flexible strips in H2Odyssey's GoBag are not uniform as required by the Patent-in-Suit. As such, H2Odyssey's GoBag does not meet each limitation of the Patent-in-Suit and therefore do not infringe the Patent-in-Suit.

41.     Further, no doctrine of equivalents analysis applies because prosecution history estoppel applies to the inclusion of "uniform predetermined thickness" in the claims. The determination of infringement under the doctrine of equivalents is limited by prosecution history estoppel. *See, e.g., DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 469 F.3d 1005, 1013 (Fed. Cir. 2006).

42.     In order to overcome the PTO's objections and cited prior art, claim 1 of the Patent-in-Suit was narrowed to specify that the flexible strips have a "uniform predetermined thickness," a limitation that was not present before amendment. Such a narrowing of claim scope serves as a disclaimer of the territory between the original claims and the amended claims. *See, e.g., Voda v. Cordis Corp.,* 536 F.3d 1311, 1325 (Fed. Cir. 2008).

43.     As referenced above, on June 4, 2018, in a letter to Gooper's CEO Philip Naftali, H2Odyssey informed Gooper that it would bring this current action for declaratory judgment of non-infringement against Defendants if they continued to threaten its customers with infringement of the Patent-in-Suit.

44.     Despite H2Odyssey's clear and reasoned analysis that its GoBags do not infringe the Patent-in-Suit, Defendants have continued to threaten H2Odyssey's customers in an objectively reckless manner, thus causing irreparable harm to H2Odyssey. Simply put, H2Odyssey's GoBags do not have a uniform thickness and thus cannot infringe the Patent-in-Suit.

45.     Accordingly, H2Odyssey, along with its authorized partners and customers, cannot be held liable for infringement of the Patent-in-Suit by making, selling, offering for sale, importing, or exporting H2Odyssey's GoBag.

**Defendants' Bags Are Not Protected by the Patent-in-Suit**

46.     Gator Dry Bags and Gooper's dry bags also include recessed and/or raised areas on a strip where artistic designs and product names are displayed.  Such markings/indentations destroy and uniformity in thickness.

47.     Gooper has several versions of its dry bags, named the Key, Classic, Multi, and the Cannabis case (the "Gooper Bags").

48.     Indeed, the front flexible magnetic strips of the Gooper Classic Dry Bag contain both indentations and lettering depicting the Gooper logo. Therefore, the flexible magnetic strips of the Gooper Bags do not contain a "predetermined uniform thickness," as required by claim 1 of the Patent-in-Suit.

-9-

49.     Similarly, as shown on the Gator Minnow below, the front flexible magnetic strips of the Gator Bags contain both indentations and lettering depicting the Gator logo.  Therefore, the flexible magnetic strips of the Gator Bags do not contain a "predetermined uniform thickness," as required by claim 1 of the Patent-in-Suit.

 

50.     The following screen shot from Gooper's website shows both that it claims its bags are patented and that the flexible magnetic strips that do not contain the Patent-in-Suit's required predetermined uniform thickness:



**<u>Defendants' False and Misleading Actions</u>**

51.    Despite the fact that neither the Gator Bags nor the Gooper Bags are covered by the Patent-in-Suit, Defendants claim in their public marketing materials, websites, LinkedIn pages, and in communications to H2Odyssey's customers, that their products are superior to H2Odyssey's GoBags because Defendants' bags are patented.

52.   As one example, Goldstein recently threatened one of H2Odyssey's San Diego customers that the customer would be sued for patent infringement by Defendants if it continued to carry and sell H2Odyssey's GoBags at its San Diego stores.

53.   Defendants' marketing and advertisements are literally false because Defendants sell products that are not actually protected by the Patent-in-Suit.

54.   As referenced above, the claims of the Patent-in-Suit require that the flexible magnetic strips be of a "uniform predetermined thickness."

55.   Defendants knew, or should have known, that its products are not covered by the Patent-in-Suit and that markings representing that its products are covered by the Patent-in-Suit should not be used as a deterrent to competition.

56.   Each false patent marking is likely to, or at least has the potential to, discourage or deter persons and companies from commercializing competing products.

57.   Defendants' false marking of its products has wrongfully quelled competition with respect to such products thereby causing harm to Plaintiffs, the United States, and the public.

58.   Defendants wrongfully and illegally advertised patent monopolies that they do not possess, and as a result, Defendants have benefitted by maintaining a substantial market share with respect to the products referenced herein.

59.   Defendants' misrepresentations were intended to deceive the public and induce them to believe that Gooper's products are made, offered for sale, sold, or imported into the United States as protected by a patent. Defendants' misrepresentations thereby constitute a violation of 35 U.S.C. § 292.

## FIRST CLAIM FOR RELIEF

**(Declaratory Judgment of Non-Infringement of the Patent-in-Suit)**

60.   H2Odyssey repeats, realleges, and incorporates by reference the preceding allegations above as though set forth fully herein.

61.    H2Odyssey and Defendants are direct competitors.

62.    Gooper claims to own all rights, title, and interest in the Patent-in-Suit.

63.    Defendants accuse H2Odyssey of infringing the Patent-in-Suit by making, using, and/or selling the H2Odyssey GoBags.

64.    Defendants intend to stop H2Odyssey from forever selling the accused GoBags.

65.    Defendants have threatened legal action against H2Odyssey's customers regarding H2Odyssey's purported infringement.

66.    H2Odyssey's sales of the accused GoBags have decreased in response to Defendants' allegations and threats.

67.    H2Odyssey does not directly or indirectly infringe the Patent-in-Suit.

68.    A substantial, immediate and real controversy therefore exists between H2Odyssey and Defendants regarding whether the accused GoBags infringe or have infringed the Patent-in-Suit.  A judicial declaration is necessary to determine the parties' respective rights regarding the Patent-in-Suit.

## SECOND CLAIM FOR RELIEF

### (False Patent Marking)

69.    H2Odyssey realleges and incorporates by reference the foregoing allegations as though set forth fully herein.

70.    Defendants' false marking of its bags, coupled with its intended purpose in deceiving the public and consumers, is injurious to the public and to H2Odyssey.

71.    Defendants' false marking of its bags actually deceived or tended to deceive consumers.

72.    Defendants' false marking of its bags was likely to influence purchasing decisions of consumers.

73.    As a competing seller of dry bags in the United States, H2Odyssey was injured by Defendants' misrepresentations as to its bags' patent protection.

-13-

74.     As a competing seller of dry bags in the United States, H2Odyssey was injured by the direct diversion of sales from itself to Defendants and by a loss of goodwill associated with H2Odyssey's products.

75.     As a competing seller of dry bags in the United States, H2Odyssey has sustained expenses and losses as a result of Defendants' misrepresentations regarding their bags' patent protection.

76.     Defendants are liable to H2Odyssey for false patent marking under 35 U.S.C. § 292(b).

77.     The public interest requires that Defendants be enjoined from further acts of false patent marking.

## THIRD CLAIM FOR RELIEF

### (Violation of §43(a) of the Lanham Act against all Defendants)

78.     H2Odyssey realleges and incorporates by reference the foregoing allegations as though set forth fully herein.

79.     Defendants have, in contravention of 15 U.S.C. §1125, made false and misleading descriptions of fact regarding their products and in advertising their bags as being patented when, in fact, they are not.

80.     The false and misleading descriptions of fact by Defendants actually deceived or have the capacity to deceive a substantial segment of their intended recipients.

81.     The false and misleading descriptions of fact by Defendants were material, likely to influence the purchasing decision of customers, and in fact have influenced the purchasing decisions of consumers.

82.     Defendants have caused its falsely advertised bags to enter into interstate commerce.

83.     H2Odyssey and other similarly situated consumers have and continue to incur damage as a result of the false and misleading descriptions of fact made by Defendants.

-14-

**COMPLAINT**

84.   Defendants' aforementioned actions have been willful and intentional.

**PRAYER FOR RELIEF**

WHEREFORE, H2Odyssey prays for judgment against Defendants as follows:

(a)    a declaration that the accused GoBags do not infringe the Patent-in-Suit;

(b)    a determination that Defendants have violated 35 U.S.C. §292 by falsely marking its unpatented bags as patented for the purpose of deceiving the public;

(c)    an order finding that Defendants are liable for false marking of its product in an amount which is reasonable in light of the total revenue and gross profit derived from the sale of falsely marked goods and the degree of intent to falsely mark which is proven;

(d)    an order preliminarily and permanently enjoining Defendants and all of its officers, agents, servants, employees, contractors, suppliers, and attorneys, and all other persons who are in active concert or participation with them or who receive actual notice of the order by personal service or otherwise, from committing new acts of false patent marking and ceasing all existing acts of false patent marking within 90 days;

(e)    that H2Odyssey asks this Court to enter judgment in its favor and against Defendants that Defendants have violated §43(a) of the Lanham Act;

(f)    awarding H2Odyssey monetary damages and profits as set forth in 15 U.S.C. §1117 occasioned by Defendants' false and misleading descriptions of fact;

(g)    enjoining Defendants from making false and misleading descriptions of fact to potential customers and to the consuming public;

(h)    awarding prejudgment interest and costs;

(i)    finding this to be an exceptional case and awarding reasonable attorneys' fees to H2Odyssey;

(j)      an award in favor of H2Odyssey and against Defendants for the costs incurred by H2Odyssey in bringing and maintaining this action, including reasonable attorneys' fees; and,

(k)      such other and further relief as this Court deems necessary and appropriate.


Dated: April 22, 2019                    SAN DIEGO IP LAW GROUP LLP


By: /s/ Cody R. LeJeune
    TREVOR Q. CODDINGTON, PH.D.
    CODY R. LEJEUNE
    CHARLES A. BLAZER

Attorneys for Plaintiff,
P.I.C. INTERNATIONAL, INC.


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, H2Odyssey hereby demands a trial by jury of all issues so triable.

Dated: April 22, 2019                    SAN DIEGO IP LAW GROUP LLP


By: /s/ Cody R. LeJeune
    TREVOR Q. CODDINGTON, PH.D.
    CODY R. LEJEUNE
    CHARLES A. BLAZER

Attorneys for Plaintiff,
P.I.C. INTERNATIONAL, INC.

**COMPLAINT**